**UNITED STATES of America,**
**Plaintiff,**

v.

**State of WEST VIRGINIA,**
**Defendant/Third Party**
**Plaintiff,**

v.

**United States Secretary of Health and Human Services and the Centers for Medicare & Medicaid Services, Third Party Defendants.**

**No. CIV.A. 2:99–1138.**

United States District Court,
S.D. West Virginia,
At Charleston.

Aug. 5, 2002.

Rebecca A. Betts, Kelly R. Curry, Kasey Warner, Robert D. McCallum, Jr., United States Attorney's Office, Charleston, WV, David W. Ogden, Acting Asst. Attorney General of the U.S., Roberto Sanchez–Ramos, U.S. Department of Justice Civil Division, Arthur R. Goldberg, Susan K. Ullman, U.S. Department of Justice Civil Division, Washington, DC, for Plaintiff.

Darrell V. McGraw, Jr., Katherine A. Schultz, Sr., Deputy AG, Stephen Stockton, Esther T. Vann Dall, Office of Attorney General, Charleston, WV, Susan K. Ullman, U.S. Department of Justice Civil Division, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

HALLANAN, Senior District Judge.

Currently pending before the Court is Plaintiff and Third Party Defendants' Motion for Summary Judgment and Plaintiff and Third Party Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment. In response, Defendant/Third Party Plaintiff filed its Response to Plaintiff's Motion for Summary Judgment and Plaintiff and Third Party Defendants filed Plaintiff and Third Party Defendants' Reply Memorandum of Law in Support of Their Motion for Summary Judgment. Also currently pending before the Court is Defendant/Third Party Plaintiff's Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment. In response, Plaintiff and Third Party Defendants filed Plaintiff and Third Party Defendants' Memorandum of Law in Opposition to West Virginia's Motion for Summary Judgment and Defendant/Third Party Plaintiff filed its Reply Memorandum in Support of West Virginia's Motion for Summary Judgment. Having reviewed said motions, all memoranda both in support and opposition, as well as all relevant case and statutory law, the Court hereby **GRANTS** Plaintiff and Third Party Defendants' Motion for Summary Judgment, **DENIES** Defendant/Third Party Plaintiff's Motion for Summary Judgment, and **DISMISSES WITH PREJUDICE** the Third Party Complaint.

## STATEMENT OF FACTS

The Federal Employee Health Benefits Act ("FEHBA") provides health benefits for federal employees, their families, and

federal retirees. 5 U.S.C. § 8901 *et seq.* The program is administered by the Office of Personnel Management ("OPM"), which contracts with various health benefits carriers to offer health benefits plans to those who enroll in the program. 5 U.S.C. §§ 8902, 8903. The Federal Employee Health Benefits Program ("FEHBP" or "the program") is funded by contributions from enrollees and matching contributions from the federal government, which are, in turn, placed into a specifically designated account in the United States Treasury, entitled the Employee Health Benefits Fund ("the Fund"). 5 U.S.C. §§ 8906, 8909. Participating health benefits carriers receive payments and reimbursements directly from said Fund.

Congress amended FEHBA as part of the Omnibus Budget Reconciliation Act of 1990, Pub.L. 101–508, § 7002(c). The amended language, which preempts certain state taxes that are imposed directly or indirectly on the Fund, reads as follows:

(1) No tax, fee, or other monetary payment may be imposed, directly or indirectly, on a carrier or an underwriting or plan administration subcontractor of an approved health benefits plan by any State, the District of Columbia, or the Commonwealth of Puerto Rico, or by any political subdivision or other governmental authority thereof, with respect to any payment made from the Fund.

(2) Paragraph (1) shall not be construed to exempt any carrier or underwriting or plan administration subcontractor of an approved health benefits plan from the imposition, payment or collection of a tax, fee, or other monetary payment on the net income or profit accruing to or realized by such carrier or underwriting or plan administration subcontractor from business conducted under this chapter, if that tax, fee, or payment is applicable to a broad range of business activity.

5 U.S.C. § 8909(f).

In 1993, West Virginia's State Legislature passed the West Virginia Health Care Provider Tax Act of 1993 ("the Provider Tax Act"). The Provider Tax Act imposes a tax on the gross receipts of most of the State's health care providers, including, but not limited to, taxing providers of physicians' services, out-patient hospital services, in-patient hospital services, nursing services, optometric services, dental services, and ambulatory surgical centers. W.Va.Code § 11–27 *et seq.* The revenue collected as a result of the Provider Tax Act is deposited into the special revenue fund created in the State treasurer's office, known as the medicaid state share fund. W.Va.Code § 11–27–32(a). As Plaintiff and Third Party Defendants' (hereinafter "the United States") brief indicates, the Provider Tax Act "does not exempt gross receipts for health care services provided to FEHBP enrollees." (Pl. and Third Party Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. at 5). Therefore, it is the United States' position that FEHBA prevents West Virginia from imposing the aforementioned tax, as said tax is allegedly imposed indirectly on participating FEHBA carriers without qualifying as a "broad range of business activity" exemption, in violation of 5 U.S.C. § 8901(f)(1),(2). In response, Defendant/Third Party Plaintiff (hereinafter "West Virginia") asserts that the Provider Tax Act is permissible pursuant to 42 U.S.C. § 1396b(w) and furthermore, that FEHBA is superceded by 42 U.S.C. § 1396b(w).

Pursuant to federal Medicaid law, 42 U.S.C. § 1396b, for every dollar the State of West Virginia spends on health care for Medicaid recipients, the Centers for Medicare & Medicaid Services matches the dollar spent with approximately three federal

dollars. 65 Fed.Reg. 69,560 (Nov. 17, 2000). In 1993, Congress enacted 42 U.S.C. § 1396b(w), which provides for the reduction of matching federal dollars paid to a state by the sum of any revenues received by that state in the form of any health care related tax that is not "broad-based." 42 U.S.C. § 1396b(w)(1)(A). The term "broad-based health care related tax" is defined as follows:

[A] health care related tax which is imposed with respect to a class of health care items or services . . . or with respect to providers of such items or services and which . . .

(i) is imposed at least with respect to all items or services in the class furnished by all non-Federal, nonpublic providers in the State (or, in the case of a tax imposed by a unit of local government, the area over which the unit has jurisdiction) or is imposed with respect to all non-Federal, nonpublic providers in the class; and

(ii) is imposed uniformly (in accordance with subparagraph (C)).

42 U.S.C. § 1396b(w)(3)(B).

On December 20, 2001, the Court entered a Joint Stipulation of the Parties wherein the parties stipulated that, *inter alia,* "Morgan County War Memorial Hospital currently passes on the cost of West Virginia's health care provider taxes found at West Virginia Code section 11–27 *et seq.* to GEHA and Mail Handlers carriers and that these carriers pass the cost on to the Employees Health Benefits Fund." (Joint Stip.). The parties also stipulated that some indirect damage occurred to the Fund as a result of the imposition of the Provider Tax Act. *Id.* Finally, despite having entered into the aforementioned stipulations, West Virginia asserted that it "reserves all defenses and challenges including, but not limited to, the validity and applicability of 5 U.S.C.

§ 8909 and specifically avers that this statute is not controlling or applicable to West Virginia's taxes." *Id.*

## DISCUSSION

### *Standard of Review*

The standard for summary judgment review is clearly set forth in Rule 56(c) of the *Federal Rules of Civil Procedure* and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). By the Rule's terms, the summary judgment standard "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). In addition, "[w]hen a motion for summary judgment is made and supported . . . an adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

### *The Provider Tax Act is Preempted by the Federal Employee Health Benefits Act*

The Supremacy Clause of the Constitution provides as follows:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound

thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST. art. VI, cl. 2. The Supremacy Clause clearly grants Congress the authority to set aside the laws of a state when enacting federal statutes. *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 30, 116 S.Ct. 1103, 1107, 134 L.Ed.2d 237 (1996). "In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, [the Court's] sole task is to ascertain the intent of Congress." *California Fed. Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 280, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987).

The Supreme Court has held that "[s]tate action may be foreclosed by express language in a congressional enactment, by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541, 121 S.Ct. 2404, 2414, 150 L.Ed.2d 532 (2001) (citations omitted). The aforementioned varieties of preemption are known as express preemption, field preemption, and conflict preemption.

■ The United States asserts that the statutory language of FEHBA mandates preemption of the Provider Tax Act. "When Congress has made its intent to preempt state law known through explicit statutory language, as it did when it enacted 5 U.S.C. § 8909(f), deciding whether state laws are preempted becomes a straightforward task." (Pl. and Third Party Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. at 8). The United States maintains that the Provider Tax Act indirectly imposes a tax on FEHBP carriers, in violation of 5 U.S.C. § 8909(f)(1). *Id.* at 9–10. The United States cites the parties' Joint Stipulation as evidence of West Virginia's alleged concession that the Provider Tax Act is preempted by FEHBA. *Id.* at 10. Additionally, the United States asserts that the Provider Tax Act does not satisfy the exemption clause of FEBHA, and therefore, said Act is preempted by FEHBA. *Id.* at 12–13. Finally, the United States maintains that the Provider Tax Act impedes Congress' objectives in enacting FEHBA as said Act is allegedly in direct conflict with the plain language of FEHBA, and as a result, the Provider Tax Act is preempted by FEHBA.

In response [1], West Virginia asserts that the United States misrepresented the parties' Joint Stipulation. "The existence of some indirect damage [to the Fund by the Provider Tax Act] is conceded; however, this does not establish the complete pass through of the tax suggested by the United States." (Am. Resp. to Pl.'s Mot. for Summ. J. at 4). Additionally, West Virginia maintains that preemption is not warranted because the Provider Tax Act does not directly tax FEHBA carriers. *Id.* at 8–9. Furthermore, West Virginia asserts that the Provider Tax Act does not indirectly tax FEHBA carriers because "there is no legal requirement that the tax be passed on to the health care recipient or their insurance carrier," and thus, preemption is not warranted. *Id.* at 9–10. For the aforementioned reasons, West Virginia maintains that the Provider Tax Act is not preempted by FEHBA.

The Court holds that, in enacting 5 U.S.C. § 8909(f), Congress clearly and ex-

---

1. West Virginia bases the majority of its response on its interpretation of the interplay between 5 U.S.C. § 8909(f)(1) and 42 U.S.C. § 1396b(w). The Court will address the parties' positions on the interplay between the aforementioned statutes later in the opinion, as it is appropriate to focus initially on 5 U.S.C. § 8909(f).

pressly intended to preempt state law such as the Provider Tax Act. As the United States correctly discusses, FEHBA provides for the preemption of a state tax that is imposed, either directly or indirectly, on a carrier with respect to any payment made from the Fund. 5 U.S.C. § 8909(f)(1). The Provider Tax Act certainly qualifies as a "state tax," as it was enacted by the State of West Virginia and is found at West Virginia Code § 11–27 *et seq.* Although the Provider Tax Act is not imposed directly on FEHBA carriers, the Court holds that it is imposed indirectly on such carriers, in violation of 5 U.S.C. § 8909(f)(1).

The Provider Tax Act clearly directly taxes health care providers. W.Va.Code § 11–27 *et seq.* West Virginia stipulated that "Morgan County War Memorial Hospital currently passes on the cost of West Virginia's health care provider taxes found at West Virginia Code section 11–27 *et seq.* to GEHA and Mail Handlers carriers and that these carriers pass the cost on to the Employees Health Benefits Fund." (Joint Stip.). The Court holds that it is clear that the Provider Tax Act indirectly taxes at least two carriers with respect to payments made from the Fund, in violation of 5 U.S.C. § 8909(f)(1). The Court does not find merit with West Virginia's position that the Provider Tax Act does not violate FEHBA because "there is no legal requirement that the tax be passed on to the health care recipient or their insurance carrier." (Am. Resp. to Pl.'s Mot. for Summ. J. at 9).

Although there is no Fourth Circuit case law on point, the Court finds persuasive the case law of other Circuits. The Third Circuit has held that a carrier's *voluntary* decision to pass on the cost of a state tax to FEHBA enrollees (thereby, affecting the Fund) constitutes an indirect imposition of a tax, in violation of 5 U.S.C.

§ 8909(f)(1). *The Health Maint. Org. of New Jersey, Inc. v. Whitman,* 72 F.3d 1123, 1131 (3rd Cir.1995)(emphasis added). The Third Circuit opined that New Jersey's assessment scheme, which required insurance carriers to pay assessments used to defray financial losses incurred by those carriers that provided a disproportionate share of higher risk individual health insurance coverage, was preempted as it applied to FEHBA plans. "The New Jersey assessment, which increases the cost of providing health care to the federal government and its employees, frustrates these congressional objectives." *Id.* The *Health Maintenance Organization of New Jersey* Court was not persuaded by the state's argument that the assessment did not violate 5 U.S.C. § 8909(f)(1), because said assessment "simply represent[ed] a general cost of doing business," and that the decision of the carrier to pass on the tax was voluntary. *Id.* at 1129.

The Second Circuit has similarly held that certain New York state taxes were preempted by FEHBA because "payments from the Fund are directly affected by what the hospitals charge for their services, and because the surcharges increase the amounts carriers draw from the Fund, the surcharges are clearly imposed 'with respect to [ . . . ] payment[s] made from the Fund.'" *Travelers Ins. Co. v. Cuomo,* 14 F.3d 708, 716 (2nd Cir.1993), *rev'd on other grounds New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). In 1988, New York enacted New York Public Health Law § 2807–c(1)(b), which "required that insurance carriers of patients covered by any form of health plan other than the Blues [Blue Cross & Blue Shied], an HMO, or government insurance such as Medicaid must pay 13% above the DRG [diagnosis-related group] rate." *Id.* at 712, 115 S.Ct. 1671. Holding that the aforementioned state tax was preempted by FEHBA, the

Second Circuit emphasized that 5 U.S.C. § 8909(f)(1) was enacted to "reduce expenditures from the Fund by preventing states from charging taxes on health care reimbursements drawn by carriers from the Fund." *Id.* at 716 (citing H.Rep. No. 101–881, 101st Cong., 2d Sess. 169, 173 (1990), reprinted in 1990 U.S.C.C.A.N., 2017, 2181). Following the logic employed by the Second and Third Circuits, the Court holds that the Provider Tax Act violates, and is therefore preempted by, FEHBA as said Act indirectly taxes carriers with respect to payments made from the Fund.

■ The Court further holds that the Provider Tax Act does not qualify for FEHBA exemption, pursuant to 5 U.S.C. § 8909(f)(2). A state tax that satisfies the provisions of 5 U.S.C. § 8909(f)(1) may nonetheless avoid preemption provided that the tax is on the net income or profit of a carrier and provided that the tax is applicable to a broad range of business activity. 5 U.S.C. § 8909(f)(2). The Third Circuit has held that the phrase "broad range of business activity" refers to a tax that is imposed on more than a single industry or business. *Health Maint. Org. of New Jersey, Inc. v. Whitman,* 72 F.3d at 1132.

The Court holds that the Provider Tax Act clearly does not avoid preemption pursuant to FEHBA's exemption provision as said Act taxes the gross receipts of the State's health care providers, and not those of the carriers. W.Va.Code § 11–27 *et seq.* Furthermore, as the United States notes in its brief, "[t]he Provider Taxes are imposed only on gross receipts of health care providers—a narrow range of business activity; they are not general taxes such as income or sales taxes. The Provider Taxes apply only to the health care provider business, and even within that limited field, apply only to a specific list of provider activities." (Pl. and Third Party

Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. at 13). The Court finds merit with the United States' argument and, for the aforementioned reasons, holds that the Provider Tax Act does not qualify for FEHBA's exemption.

■ Because the Court holds that the Provider Tax Act is expressly preempted by FEHBA's statutory language, the Court's obligation to inquire as to the intent of Congress in enacting 5 U.S.C. § 8909(f) has been satisfied. However, the Court agrees with the United States' position that the Provider Tax Act is further preempted by FEHBA because said Act conflicts with the intent of Congress in enacting 5 U.S.C. § 8909(f). As indicated by both the Second and Third Circuits, 5 U.S.C. § 8909(f) was enacted as part of the 1990 Omnibus Budget Reconciliation Act to reduce government expenditures. *Travelers Ins. Co. v. Cuomo,* 14 F.3d at 716; *Health Maint. Org. of New Jersey, Inc. v. Whitman,* 72 F.3d at 1131. The Provider Tax Act directly conflicts with the intent of Congress in enacting 5 U.S.C. § 8909(f) in that the effect of the Act is an increase in government expenditures (in the form of increased cost of providing health care to federal government employees, their families, and federal retirees), as it has been stipulated that at least two carriers are indirectly taxed with respect to payments made from the Fund. (Joint Stip.). Therefore, the Court holds that the Provider Tax Act is preempted by FEHBA pursuant to the principals of conflict preemption as well as those of express preemption.

*5 U.S.C. § 8909(f) and 42 U.S.C. § 1396b(w) May be Read Harmoniously, and Therefore, FEHBA's Preemption Provision is Not Superseded by 42 U.S.C. § 1396b(w)*

■ As West Virginia has articulated, "[a]ssuming *arguendo,* this Court finds

that West Virginia's health care provider taxes are indirect taxes in contravention of 5 U.S.C. § 8909(f)(1), then the Court must determine whether these statutes [5 U.S.C. § 8909(f) and 42 U.S.C. § 1396b(w)] are in conflict." (Mem. in Supp. of Mot. for Summ. J. at 7). For all of the aforementioned reasons, the Court holds that the Provider Tax Act is preempted by 5 U.S.C. § 8909(f). Therefore, the Court will now discuss whether or not 5 U.S.C. § 8909(f) and 42 U.S.C. § 1396b(w) may be read harmoniously.

West Virginia asserts that the two statutes cannot be read harmoniously and that 42 U.S.C. § 1396b(w) must control. *Id.* at 10. As an initial matter, West Virginia maintains that basic principles of statutory construction require that when two statutes are in conflict, the statute that is more specific and closely applicable to the existing controversy must control over a more general statute. *Id.* West Virginia asserts that when compared to 5 U.S.C. § 8909(f), 42 U.S.C. § 1396b(w) is the more specific statute "because it deals with provider specific taxes while 5 U.S.C. § 8909(f)(1) addresses taxes in general." *Id.*

West Virginia also asserts that, at the time of the enactment of 5 U.S.C. § 8909(f), Congress was "aware of the fact that many States were using health-care related taxes to help fund their Medicaid programs." *Id.* Consequently, West Virginia alleges that at the time 5 U.S.C. § 8909(f) was enacted, Congress imposed a moratorium on the Centers for Medicare & Medicaid Services' ("CMS") regulations that banned the use of provider specific taxes (which, in turn, helped fund the states' Medicaid programs). *Id.* at 10–11. Therefore, it is West Virginia's position that in issuing said moratorium, Congress demonstrated its intent to permit the FEHBA and the states' provider specific

taxes to co-exist and, as a result, "it is clear that 5 U.S.C. § 8909(f)(1)'s preemption provision should not be construed as addressing taxation of health care providers." *Id.* at 11.

Finally, West Virginia maintains that as the statute enacted later in time, 42 U.S.C. § 1396b(w) not only replaced the Congressionally issued moratorium, but also demonstrated Congress' intent that 5 U.S.C. § 8909(f) *not* preempt states' health care provider taxes that are enacted in conformity with 42 U.S.C. § 1396b(w). *Id.* West Virginia emphasizes the fact that Congress did not provide for an exclusion for FEHBA carriers in 42 U.S.C. § 1396b(w) as further evidence of its position. *Id.*

The United States maintains that 5 U.S.C. § 8909(f) and 42 U.S.C. § 1396b(w) may be read harmoniously. (Pl. and Third Party Defs.' Mem. of Law in Opp'n to West Virginia's Mot. for Summ. J. at 9). "This Court can harmonize the two statutory provisions by finding that while the Provider Taxes are preempted under § 8909(f), excluding the revenues generated by the FEHBP from the Provider Taxes will not affect West Virginia's ability to comply with § 1396b(w) and obtain federal matching funds." *Id.* In response to West Virginia's assertion that, when compared to 5 U.S.C. § 8909(f), 42 U.S.C. § 1396b(w) is the more specific statute and therefore, must control, the United States contends that "West Virginia ignores that § 8909(f) explicitly addresses the preemption of state taxes by the FEHBA, the issue in this litigation, while § 1396b(w) does not mention the FEHBA." *Id.* at 10.

The United States similarly disputes West Virginia's assertion that the Congressionally issued moratorium provides evidence of Congress' intent that 5 U.S.C. § 8909(f)'s preemption not prohibit the states' enactment of provider specific tax-

es. The United States maintains that the moratorium is irrelevant to the issue of 5 U.S.C. § 8909(f)'s preemption provision and to any extent that said moratorium is at all relevant, "[t]he fact that § 8909(f) was enacted in the same Act as [the moratorium] . . . only supports the controlling legal presumption that Congress [was] aware of previously-enacted legislation, *i.e.*, that Congress was well-aware of the existing preemption framework." *Id.* at 11.

Finally, the United States disputes West Virginia's argument that 42 U.S.C. § 1396b(w) must control because it was enacted later in time than 5 U.S.C. § 8909(f). The United States asserts that the logic of West Virginia's above-stated, "repeal-by-implication" position is faulty, as the United States maintains that the two statutes may be read harmoniously. (Pl. and Third Party Defs.' Reply Mem. of Law in Supp. of Their Mot. for Summ. J. at 8). "Section 8909(f) preempts the Provider Taxes because they burden the FEHB, but excluding the FEHBP from the Provider Taxes does not affect the nature of the the [sic] Provider Taxes as broad-based and uniform for purposes of the State's participation in the Medicaid program under § 1396b(w)." *Id.* Furthermore, the United States asserts that because 42 U.S.C. § 1396b(w) was enacted after the enactment of 5 U.S.C. § 8909(f), "it can be assumed that Congress was aware of the preemption provision of § 8909(f), and intended its definitions in § 1396b(w) to be applied within the existing legal framework, which included the preemption provision." *Id.* at 9.

The Court holds that 5 U.S.C. § 8909(f) and 42 U.S.C. § 1396b(w) may be read

harmoniously, and therefore, FEHBA's preemption provision is not superseded by 42 U.S.C. § 1396b(w). The Court finds merit with the United States' position that the two statutes may be harmonized "by finding that while the Provider Taxes are preempted under § 8909(f), excluding the revenues generated by the FEHBP from the Provider Taxes will not affect West Virginia's ability to comply with § 1396b(w) and obtain federal matching funds." (Pl. and Third Party Defs.' Mem. of Law in Opp'n to West Virginia's Mot. for Summ. J. at 9).

The Court holds that the clear and express intent of Congress mandates that 5 U.S.C. § 8909(f) and 42 U.S.C. § 1396b(w) be read harmoniously. As an initial matter, the Court agrees with the United States' position that 5 U.S.C. § 8909(f) is the more specific statute, as it directly and specifically addresses FEHBA's preemption of state taxes, whereas 42 U.S.C. § 1396b(w) does not. Congress had no need to address FEHBA's preemption provision in 42 U.S.C. § 1396b(w), as it had done so at length in 5 U.S.C. § 8909(f). Additionally, Congress repealed the moratorium, which had stayed the government agency regulations that banned the use of provider specific taxes. In so doing, the Court holds that Congress communicated its intent to give full effect to FEHBA's preemption provision[2] and therefore, FEHBA is not superseded by 42 U.S.C. § 1396b(w).

### The Third Party Complaint, Against the United States Secretary of Health and Human Services and the Centers for Medicare & Medicaid Services, is Dismissed as Moot

The United States asserts that "[b]ecause West Virginia has received all the

---

**2.** The Court finds that the statutes are *not* ambiguous and therefore, the Court need not defer to the agencies' interpretation of 42 U.S.C. § 1396b(w) and 5 U.S.C. § 8909(f), pursuant to *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

relief to which it is entitled, and there is no controversy between the parties, the Third Party Complaint should be dismissed." (Pl. and Third Party Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. at 18). Specifically, the United States refers to the fact that Third Party Defendants, the United States Secretary of Health and Human Services and the Centers for Medicare & Medicaid Services, in response to requests for admissions, have admitted that should the Court determine that the Provider Tax Act is preempted by 5 U.S.C. § 8909(f), that decision would not affect whether monies collected pursuant to the Provider Tax Act may be used to obtain matching funds pursuant to 42 U.S.C. § 1396b(w). Clearly, West Virginia agrees with the above-stated position, as it states "West Virginia believes that based upon CMS's [Centers for Medicare & Medicaid Services] admissions, the Third–Party Complaint *is now moot.*" (Am. Resp. to Pl.'s Mot. for Summ. J. at 11 n. 11) (emphasis added). Consequently, the Court hereby holds that the Third Party Complaint should be dismissed with prejudiced as moot.

### CONCLUSION

In conclusion, for all of the aforementioned reasons, it is **ORDERED** that Plaintiff and Third Party Defendants' Motion for Summary Judgment is **GRANTED,** Defendant/Third Party Plaintiff's Motion for Summary Judgment is **DENIED,** and the Third Party Complaint is **DISMISSED WITH PREJUDICE.**

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to all counsel of record.